## THE ALLISON WHITE.

(District Court, D. Rhode Island. August 15, 1904.)

### No. 1,110.

1. SHIPPING—INJURY OF STEVEDORE—FALLING OF STANCHION.

Evidence considered, and *held* insufficient to show that the falling of a stanchion in the hold of a coal barge, by which libelant was injured, while engaged in discharging cargo, was caused by its unsoundness or insecure fastenings, so as to render the barge liable for the injury; it appearing that it had been struck by the steam shovel used by the consignees in discharging, and that other stanchions had been loosened in such manner, which was not an infrequent occurrence.

In Admiralty. Suit for personal injury.

Hugh J. Carroll, for libelant.
Carpenter, Park & Symmers and Frank Healy, for claimant.

BROWN, District Judge. The libelant was seriously and permanently injured by the fall of a stanchion, while he was at work as a

coal shoveler or trimmer in the hold of the barge. He was in the employment of the Newell Coal & Lumber Company, consignee, which had full control of the discharge of the cargo of coal. The. libel alleges that the fall of the stanchion was due "to its unsound, weak, and unsafe condition, and to its weak, negligent, and unsafe fastening." The claimant contends that the stanchion was of proper character and construction, but was knocked out by the steam shovel in use by the consignee. After the accident an inspection was made by the master of the barge, who says that he found that a cleat of oak, used to fasten the top of the stanchion, was split, one end being fast in the beam, the other hanging down; that the split was in the center of the cleat. Thomas B. Markham also made an inspection, finding broken two spikes which had been driven into the stanchion. He admitted that at a previous trial he testified, "I felt of it—felt where it was broken off—and along this beam it was ripped off and slivered off the same as you would take an axe; the same as something heavy had driven that stanchion away from the beam where it was fastened." Markham was not questioned as to the cleat. According to the testimony of the guyman and of other workmen that were in the hold, the steam shovel did not strike the stanchion at the precise time of its fall. There is evidence, however, that the stanchion had been struck previous to its fall, though no one heard the cracking of wood. Peterson, the guyman, testified that before the accident he noticed that the stanchion was loose at the top, and that he said to the master of the barge, "That post is loose, and we get the coal out of the way there it might fall down." This the master expressly denies. At a previous trial in the state court, wherein the Newell Coal & Lumber Company was defendant, and the declaration alleged that the steam shovel struck the post and knocked it against the plaintiff, Peterson was a witness, and was asked as to the stanchion: "Q. What made it fall? A. Well, I don't know; couldn't tell you. * * * They must have been loose. I can't tell. I didn't examine it." He then said nothing about seeing that the stanchion was loose, nor about calling it to the attention of the master. Carlson, another witness for the libelant, testifies that he saw that the post was loose about an hour before the accident. His testimony at the former trial is not consistent with this testimony. The stanchion was a sound timber. No fault was found with the original construction or method of fastening. Counsel for libelant argues, from the fact that the stanchion had been spiked, that it had been previously broken and temporarily repaired, and that the motion of the vessel, with or without the pressure of the coal, had broken the spikes, and that the stanchion was loose, "so that when the support afforded by the cargo was withdrawn, some slight vibration, occurring in the ordinary sequence of events, changed its center of gravity, and caused it to fall." The libelant relies chiefly upon the William Branfoot, 52 Fed. 390, 3 C. C. A. 155. In that case, however, there was clear evidence of an old break; and it was held that a proper examination would have disclosed the dangerous condition of the stanchion, and that the condition was probably known to those having the vessel in charge. In this case there is no sufficient evidence that the stanchion was not in sound condition when the barge was turned over to

the consignee to be discharged. The existence of broken spikes after the accident is not inconsistent with a sound condition of the stanchion at the time the vessel reported for discharge. The contention that the post was seen by Peterson and Carlson to be loose before the accident, is not sustained by a satisfactory preponderance of evidence; but, even if it were, this would not be sufficient to exclude a blow of the steam shovel as a probable cause of the loosening of the stanchion.

Upon the evidence, I find myself in doubt as to the cause of the loosening of the stanchion. It is impossible in this case to apply the doctrine res ipsa loquitur, and to say that the fall of the stanchion casts upon the claimant the burden of explanation to relieve the barge from fault. The circumstances raise no presumption that the stanchion was insecurely fastened before the steam shovel was put into the hold, or that there had been a failure of proper inspection after previous discharges of cargoes. It is, to say the least, quite as probable that the stanchion was broken from its fastenings by the steam shovel operated by the Newell Coal & Lumber Company, as that it had been broken previously. The libelant's brief says, "It can be said to be wholly impossible for a shovel of this kind, thus handled, * * * to strike against a stanchion with sufficient force to injure it." Nevertheless it appears that two other stanchions were loosened in this way, and that it is not infrequent for an automatic steam shovel to knock out stanchions. When filled with coal, the shovel would weigh between 4,000 and 5,000 pounds. A swinging blow from this would apparently be a sufficient reason to account for the condition of the beam as described by Markham, and for the breaking of the cleat. I am of the opinion that the libelant has failed to establish, by a preponderance of evidence, negligence as charged in the libel, or negligence of any other character for which the barge is responsible.

The libel will be dismissed.